**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ANTONIO HENNIS,                         )
                                        )
                    Plaintiff,          )        Civil Action No. 10-445
                                        )
        v.                              )
                                        )        Magistrate Judge Bissoon
OFFICER TEDROW, *et al.*,               )
                                        )
                    Defendants.         )


## <u>MEMORANDUM OPINION AND ORDER</u>

For the reasons that follow, Defendants' Motion to Dismiss (Doc. 60) will be granted

with prejudice in part and granted without prejudice in part.

Antonio Hennis ("Plaintiff") is a state prisoner currently incarcerated in the State

Correctional Institution at Greensburg ("SCI-Greensburg"), located in Greensburg,

Pennsylvania. Plaintiff brings this suit pursuant to the Civil Rights Act of 1871,

42 U.S.C. § 1983, alleging deprivations of his rights under the First, Eighth, and Fourteenth

Amendments to the United States Constitution by eight Defendants, all of whom were employed

by the Pennsylvania Department of Corrections ("DOC") at all times relevant to the complaint.

Compl. (Doc. 3) ¶ 51. This suit commenced with this Court's receipt of Plaintiff's motion to

proceed *in forma pauperis* ("IFP") on April 5, 2010. (Doc. 1). Leave to proceed IFP was

granted on April 7, 2010. (Doc. 2). Plaintiff consented to the jurisdiction of a magistrate judge

on April 7, 2010. (Doc. 5). Defendants consented to the same on June 29, 2010. (Doc. 17).

Defendants filed a motion to dismiss on July 14, 2010. On July 15, 2010, this Court *sua*

*sponte* converted this to a motion for summary judgment with respect to Defendants' argument

that Plaintiff failed to exhaust most of his administrative remedies. (Doc. 24). Plaintiff

responded to Defendants' motion on August 25, 2010. (Docs. 28-30). This issue is ripe for disposition

### A.  Plaintiff's Factual Allegations and Legal Claims

Plaintiff avers that he is of Caribbean descent, and a practitioner of "orthodox Nazarite vow Rastafarianism." (Doc. 3) ¶ 17. Plaintiff asserts that on May 11, 2008, Defendant Tedrow, a corrections officer at SCI-Greensburg, ordered Plaintiff to cut his dreadlocks – which Plaintiff avers would be a violation of his religious beliefs. Id. ¶ 18. Plaintiff asserts, and Defendants concede, that applicable DOC policy gave Plaintiff fifteen days to apply for a so-called "hair exemption," which would allow Plaintiff to keep his dreadlocks despite DOC grooming policies. See DC-ADM 819.G.2.b; see also, e.g., Def.s' Ex. B to Br. in Supp. of Mot. to Dismiss (Doc. 21-1) at 13. Plaintiff alleges that he has benefitted from a hair exemption since 1997, and produces documents that indicate that he enjoyed one at SCI-Greensburg in 2004. See Pl.'s Ex. G to Br. in Opp'n to Mot. for Summ. J. (Doc. 28-7) at 1. Plaintiff alleges that he has been "forced" by Defendant Watkins, the director of the chaplaincy at SCI-Greensburg, to file for hair exemptions twice, and that "every time an officer threatens the Plaintiff to cut his dreadlocks his exemption mysteriously disappears from the records."[1]  (Doc. 3) ¶ 46.

On May 18, 2008, Defendant Tedrow allegedly "left his post" to follow up with Plaintiff regarding his order of May 11, 2008. Id. ¶ 19. Plaintiff asserted that he had sought a hair exemption, but Defendant Tedrow allegedly responded "'I don't care have them cut when I get

---

[1] The complaint contains no factual allegations involving other officers ordering Plaintiff to cut his hair, much less attempting to cut his hair themselves.

back.'" Id. Plaintiff filed grievance number 229125, naming Defendant Tedrow, that same day. Id. ¶ 20.

Defendant Tedrow initiated misconduct proceedings against Plaintiff on or about May 18, 2010 – apparently sometime after Plaintiff initiated his grievance. See (Doc. 3) ¶ 20; see also (Doc. 21-1) at 7; see also Def.s' Ex. C to Br. in Supp. of Mot. to Dismiss (Doc. 21-1) at 17. This misconduct was dismissed. (Doc. 21-1) at 17. Plaintiff eventually was granted a hair exemption on July 28, 2008. See Def.s' Ex. D to Br. in Supp. of Mot. to Dismiss (Doc. 21-1) at 19. There is no indication in the record that Plaintiff was ever forced to cut his hair.

Plaintiff's grievance number 229125 was denied on initial review on May 22, 2008. (Doc. 3) ¶ 21; (Doc. 21-1) at 7. Plaintiff appealed to Defendant Lockett on May 29, 2008, and was denied the following day. (Doc. 3) ¶¶ 22-23; (Doc. 21-1) at 8-9. Plaintiff filed a second-level appeal with the Department of Corrections's Chief Grievance Officer, Defendant Watson. (Doc. 3) ¶ 24; (Doc. 21-1) at 10-11. Defendant Watson remanded the grievance to Defendant Lockett on June 24, 2008. (Doc. 3) ¶ 25; (Doc. 21-1) at 12. Defendant Lockett denied the grievance once again on July 2, 2008. (Doc. 3) ¶ 26; (Doc. 21-1) at 12-13. Plaintiff appealed this second denial to Defendant Watson. (Doc. 3) ¶ 28; (Doc. 21-1) at 14. Defendant Watson affirmed Defendant Lockett's decision on July 17, 2008. (Doc. 3) ¶ 29; (Doc. 21-1) at 15.

Plaintiff asserts that Defendant Tedrow's alleged misconduct violated his rights under the Equal Protection Clause of the Fourteenth Amendment, constituted harassment, and rose to the level of various state torts. Id. ¶ 55. Additionally, Plaintiff claims that Defendant Watkins misplaced Plaintiff's files, which was a violation of his rights under the Free Exercise Clause of the First Amendment, and rose to the level of various state tort laws. Id. ¶ 58

Next, Plaintiff avers that on November 17-18, 2009, during a prison lockdown, he was denied vegetarian meals, which are required by his religious beliefs. (Doc. 3) ¶ 32. Plaintiff brought this to the attention of Defendants Maceyko and Lily – both of whom were, at the time of the alleged incident, corrections sergeants. Id. ¶ 31-33. Defendants Maceyko and Lily allegedly "mocked" Plaintiff, and ordered him to eat what he was given. Id. ¶ 32. Plaintiff asserts that he also observed Defendant Maceyko providing another inmate with a "medical required meal[.]" (Doc. 29) ¶ 19. Plaintiff threatened to file a grievance, and Defendant Maceyko responded "go ahead it won't go far." (Doc. 3) ¶ 33. The record indicates that Plaintiff filed grievance 297181 on November 20, 2009 – after the lockdown was over – and indicated that he had been unable to eat anything other than breakfast for a two day period because the meals that he was served contained meat. Id. ¶ 34; Ex. K to Compl. (Doc. 1-3) at 12 ("[f]or two days the only meal that I was able to eat was breakfast."). Plaintiff named both Defendants Maceyko and Lily in this document. Id. The record also contains a memorandum from the grievance coordinator at SCI-Greensburg, indicating receipt of this document. Ex. K. to Pl.'s Br. in Opp'n to Summ. J. (Doc. 28-11) at 1. Plaintiff avers that he never received a response to this grievance, see (Doc. 3) ¶ 35, and there is no indication in the record to the contrary.

Plaintiff alleges that the acts of Defendants Maceyko and Lily violated his rights under the Equal Protection Clause of the Fourteenth Amendment, and the Cruel and Unusual Punishment Clause of the Eighth Amendment. He alleges that these acts also constituted harassment, and violated various state tort laws. Id. ¶¶ 55-56.

Next, Plaintiff indicates that he was deprived of his religious headgear, to which he refers as a "crown," by Defendant Maceyko. (Doc. 3) ¶ 38. It appears from the record to have begun

on March 7, 2010, when Defendant Maceyko inquired of Plaintiff about the crown.[2]  Plaintiff asserts that he "made it clear that it was religious approved [*sic*] for four years and [he has] worn it around the prisons on certain occasion [*sic*] for the past four years."  Id. ¶ 37.  Plaintiff asserts in his complaint that he purchased the crown from a DOC-approved vendor in 2006, and wore it while he was housed at SCI-Graterford without incident.  Id. ¶¶ 44, 47.  After conferring with Defendant Watkins, who is the director of the chaplaincy at SCI-Greensburg, Defendant Maceyko confiscated the crown, per Defendant Watkins's opinion that this particular type of religious headgear was banned by the DOC.  Id. ¶ 38.  When he questioned Defendant Maceyko on the policy, Plaintiff was told to "pick it up with the chaplain [Defendant Watkins]."  Ex. N to Compl. (Doc. 1-3) at 15.

Plaintiff filed grievance number 310415 concerning this incident on March 10, 2010.  Id. This was denied on March 23, 2010.  Ex. N to Pl.'s Br. in Opp'n to Summ. J. (Doc. 28-14) at 1. It appears from the record that Plaintiff granted permission to DOC officials to send his headgear to be evaluated by the Religious Accommodation Committee in Camp Hill, Pennsylvania.  Ex. O to Pl.'s Br. in Opp'n to Summ. J. (Doc. 28-15) at 1.  Plaintiff was informed in a memorandum from Defendant Watkins dated July 26, 2010, that the committee found that his headgear, which had been "'previously permitted by other institutions [,]'" created potential security risks because it did not "'fit flush to the head and sill could aid in the concealing of contraband.'"  Id.  As such, Plaintiff was not permitted to wear his crown in the DOC.  Plaintiff contends that this has caused him "not [to] be able to participate in the practice of his religion's celebration of the resurrection

---

[2] Plaintiff does not explicitly allege a date on which this conversation took place in his complaint.  However, the record indicates that it took place on March 7, 2010.  Specifically, in grievance number 310415, Plaintiff indicates that his crown was confiscated three days after he was approached by Defendant Maceyko (Doc. 3) at 15.  The confiscation slip is dated March 10, 2010.  Id. at 14.

in honoring the Messiah by keeping his head covered during the Passover."  (Doc. 3) ¶ 49.

Plaintiff also asserts that prisoners of other faiths are allowed to wear their religious headgear

freely – although he does not indicate whether their headgear fits flush to the head.  Id. ¶ 48.

Plaintiff asserts that Defendant Maceyko's actions with respect to the confiscation of his

crown violated his rights under the Free Exercise Clause of the First Amendment.  Id. ¶ 57.  It

also constituted harassment, and violated various state tort laws.  Id.  Similarly, Plaintiff asserts

that Defendant Watkins's involvement in the confiscation of his headgear violated the Free

Exercise clause, constituted harassment, and violated various state torts.  Id. ¶ 58.

Plaintiff affirmatively asserts that he is suing Defendants in their individual as well as

official capacities.  Plaintiff seeks declaratory and injunctive relief against Defendants, (Doc. 3)

at 18-29), as well as costs, "special" damages, and punitive damages.  Id. at 20.


### B.  Standard of Review


#### 1.  Summary Judgment Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving

party, ". . . the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law. . ."  Fed.R.Civ.P. 56(c).  Summary judgment may be granted against a party

who fails to adduce facts sufficient to establish the existence of any element essential to that

party's case and for which that party will bear the burden of proof at trial.  Celotex Corp. v.

Catrett, 477 U.S. 317 (1986).  The moving party bears the initial burden of identifying evidence

that demonstrates the absence of a genuine issue of material fact.  Once that burden has been

met, the non-moving party must set forth ". . . specific facts showing that there is a genuine issue for trial . . ." or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson, 477 U.S. at 251-52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. Anderson, 477 U.S. at 249-50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. See Fed.R.Civ.P. 56(e); Celotex, 477 U.S. at 324; J.F. Feeser, Inc., v. Serv-A-Portion, Inc., 909 F.2d 1524, 1542 (3d Cir. 1990).

### 2. **Motion to Dismiss Standard**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) if, reading the complaint in the light most favorable to the plaintiff, and accepting all factual allegations as true, no relief could be granted under any "reasonable reading of the complaint" Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). A complaint must be dismissed even if the claim to relief is "conceivable," because a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S.__, 129 S.Ct. 1937, 1949 (2009). A court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Emp.s' Ret. Sys. v. Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004). Nor must a court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555. Furthermore, it is not proper for a court to assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." Assoc.'d Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983).

When ruling on a 12(b)(6) motion, a court may take into consideration information in addition to the complaint, such as "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. Pension Benefit Guar. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). (citations omitted). Moreover, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. Spruill v. Gillis, 372 F.3d 218, 223 (3d Cir.2004); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Finally, if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).

**C.** **Analysis**

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (*overruled in part on other grounds*, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)). Defendants make several arguments supporting the grant of summary judgment or dismissal in their favor. These will be addressed *seriatim*.

**1. Eleventh Amendment Immunity**

Defendants argue that Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment to the Constitution of the United States.

The Eleventh Amendment bars suits against states and state agencies in federal court. See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). As such, a lawsuit against the Commonwealth of Pennsylvania would be barred by the Eleventh Amendment. Quern v. Jordan, 440 U.S. 332, 340-341 (1979). When individual Commonwealth employees are sued in their official capacities, the action is considered to be against the Commonwealth itself. See Kentucky v. Graham, 473 U.S. 159, 166 (1985). The immunities available to the individual Defendants sued in their official capacity are the same as those possessed by the Commonwealth and, accordingly, Plaintiff's "official capacity" section 1983 claims for damages are barred. Id. at 167. Plaintiff cannot succeed in his official capacity claims for damages against Defendants as a matter of law and, consequently, those claims must be dismissed.

## 2. **State Law Claims**

Next, Defendants argue that Plaintiff's state law tort claims against them are barred by sovereign immunity. The doctrine of sovereign immunity bars tort claims against the Commonwealth, its officials, and employees acting within the scope of their duties.[3] 1 Pa.C.S.A. § 2310. The Commonwealth has statutorily waived sovereign immunity, but only "for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity" in specific, enumerated exceptions. 42 Pa.C.S.A. § 8522(a). There are nine instances in which sovereign immunity has been waived by statute – these are negligent acts pertaining to: (1) vehicle liability; (2) medical professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines. 42 Pa.C.S.A. § 8522(b)(1)-(9). These nine exceptions must be "strictly construed and narrowly interpreted." Brown v. Blaine, 833 A.2d 1166, 1173 (Pa. Cmwlth. 2003). "Commonwealth employee[s] [are] protected by sovereign immunity from the imposition of liability for intentional tort claims." La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Cmwlth. 1992).

---

[3] Conduct of an employee is within the scope of employment only if: (1) it is of a kind that the employee is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is calculated, at least in part, by a purpose to serve the employer. Brumfield v. Sanders, 232 F.3d 376, 380 (3d Cir. 2000), (citing Restatement (Second) Agency § 228). Additionally, if force is intentionally used, "the use of force is not unexpectable" by the employer. Restatement (Second) Agency § 228(1)(d).

After reviewing the claims in the complaint, it is clear that none of his state tort claims fall under the above nine exceptions. Thus, Plaintiff's state law tort claims for damages will be dismissed with prejudice.

Additionally, to the extent that Plaintiff seeks declaratory relief that various state tort laws were violated by Defendants, his claims also must be dismissed. Declaratory relief is not proper solely to adjudicate past conduct, nor simply to proclaim that one party is liable to another. Hodinka v. Delaware County, ___ F.Supp.2d ____, No. 08-5663, 2011 WL 49570, at *5 (E.D.Pa. Jan. 7, 2011) (citing Corliss v. O'Brien, 200 F.App'x 80, 84 (3d Cir. 2006)). "If the declaratory judgment is sought to protect against a feared, future event, the plaintiff must demonstrate that the probability of that future event occurring is real and substantial, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Gruntal & Co., Inc. v. Steinberg, 837 F.Supp. 85, 89 (D.N.J. 1993) (internal quotes and citations omitted). Plaintiff has not done so. Moreover, as it is clear that, as a matter of law, leave to amend his pleadings with respect to seeking declaratory relief for past state law violations would be futile, dismissal will be with prejudice.


### 3. **Supervisory Liability**

Next, Defendants argue that Plaintiff has failed to allege against Defendants Beard, Watson, Mazurkiewicz, Lockett, and Watkins sufficient personal involvement in the alleged bad acts on which he bases his complaint for section 1983 liability to attach. (Doc. 21) at 8. It is well established that no liability exists under section 1983 solely by means of vicarious liability or *respondeat superior*. Shaw v. Stackhouse, 920 F.2d 1135, 1147 (3d Cir. 1990). Instead, in order for section 1983 liability to attach, a plaintiff must show that a defendant was personally

involved in the deprivation of his or her federal rights.  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).  In cases involving a supervisory or reviewing defendant, personal involvement may be shown through "'allegations of personal direction or of actual knowledge and acquiescence.'" Id. at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)).  Mere "participation in the after-the-fact review of a grievance s not enough to establish liability" under section 1983.  Robinson v. Sobina, No. 09-247, 2010 WL 5418916 (W.D.Pa. Dec. 23, 2010) (Bissoon, Mag.J.) (internal citations and quotes omitted)

Additionally, a state official in a supervisory role has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights.  See Brown, 922 F.2d at 1120.  However, in cases where a supervising official knowingly permits a continuing custom or policy that results in harm to a plaintiff, section 1983 liability may attach. See Colburn v. Upper Darby Twp., 838 F.2d 663, 673 (3d Cir. 1988) (*overruled in part on other grounds by* Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).  At a minimum, such liability attaches "'only where there are both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate.'"  Colburn, 838 F.2d at 673 (quoting Chinchello v. Fenton, 805 F.2d 126, 133 (3d Cir. 1986)).

Plaintiff makes no allegations in his complaint that, if true, would support the conclusion that Defendants Beard, Watson, Mazurkiewicz, or Lockett had any personal involvement in any of bad acts of which Plaintiff complains.  Indeed, the factual allegations in the complaint name Defendants Watson, Mazurkiewicz and Lockett only in connection with the adjudication of Plaintiff's grievances.  No factual allegations are made against Defendant Beard, and it appears

that he was named as a party to this suit as an afterthought. Plaintiff also fails to so much as hint at the personal involvement of these Defendants. Consequently, Defendants Beard, Watson, Mazurkiewicz, and Lockett will be dismissed. Furthermore, as it appears that leave to amend would be futile, dismissal will be with prejudice.

Plaintiff's allegations against Defendant Watkins are slightly different than those against the other Defendants address in this section. Plaintiff alleges that Defendant Watkins violated his constitutional rights because he (1) forced him to reapply twice for a hair extension; and (2) informed Defendant Maceyko that Plaintiff's crown was banned by the Pennsylvania DOC. This is enough, under the above standard, to assert personal involvement. Accordingly, this argument does not dispose of Plaintiff's claims against Defendant Watkins.

### 4. Exhaustion of Administrative Remedies

Defendants argue that Plaintiff has failed to exhaust administrative remedies with respect to all of his claims, except for one against Defendant Tedrow.

Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion requirement requires the following:

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Prior to filing a civil action, a prisoner-plaintiff must exhaust his administrative remedies. Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000), cert. granted, 531 U.S. 956 (2000), aff'd, 532 U.S. 731 (2001). There is no "futility" exception to the

administrative exhaustion requirement.  Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) (citing Nyhuis v. Reno, 204 F.3d 65, 78 (3d Cir. 2000)).

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines.  Woodford v. Ngo, 548 U.S. 81, 90-91 (2006) ("[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . .").  This is the functional equivalent of the procedural default requirement in the habeas context.  Spruill, 372 F.3d at 228-29.  One such procedural rule that has been recognized by the Court of Appeals as being part of DC-ADM 804 – at least as a general matter – is the requirement to name defendants.  Id. at 234.

While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial."  Id. at 228-29; Nyhuis, 204 F.3d at 77-78.  Finally, the Court of Appeals for the Third Circuit has held that exhaustion is an affirmative defense, and, as such, must be pleaded and proven by the party asserting it.  Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).

In support of this argument, Defendants adduced the sworn declaration of Dorina Varner, Chief Grievance Officer in the Grievance Review Office of the DOC.  Ex. A to Def.s' Br. in Supp. of Mot. to Dismiss. (Doc. 21-1) at 2-4.  In this document, Ms. Varner relates that, between April 5, 2008, and April 5, 2010, Plaintiff filed only one grievance that he appealed to final review – grievance number 229125.  Id. at 4.  Defendants also submitted copies of the initial grievance, its response, Plaintiff's subsequent appeals, and the responses to those appeals.  Id. at

6-15. Next, Defendants submitted a printout of a list of the number of misconducts with which Plaintiff was charged from September 22, 2007, to February 2, 2010.[4] Id. at 17.

While Defendants concede that Plaintiff has exhausted grievance 229125 – which is related to Defendant Tedrow's order to Plaintiff to cut his hair – they argue that the scope of that grievance is significantly narrower than Plaintiff's federal clams. First, Defendants assert that Plaintiff names only Defendant Tedrow in the grievance. Second, Defendants assert that Plaintiff did not exhaust any claims of First Amendment retaliation in grievance 229125 or any other grievance. (Doc. 21) at 11-13.

With respect to Defendants' first argument, upon examining the chain of documents related to grievance 229125, Defendant Watkins was named only in connection to receiving a request for a hair exemption. There is no indication in this series of documents that would put prison officials on notice of any alleged misconduct on the part of this Defendant. Indeed, Plaintiff never mentions anything in this grievance, or its subsequent appeals, about Defendant Watkins allegedly misplacing prior requests for hair exemptions – or of engaging in any bad acts of any sort. It is clear from the record that Plaintiff has not exhausted his claims with respect to his hair exemption against Defendant Watkins. Additionally, as it is well outside the period of time during which Plaintiff could file a grievance with respect to this incident, Plaintiff has procedurally defaulted on such claims.

So too has Plaintiff procedurally defaulted on his retaliation claims. Plaintiff's grievance 229125 does not include any claims regarding Defendant Tedrow's allegedly retaliatory issuance of misconduct charges, nor does the record indicate that Plaintiff filed another grievance in order

---

[4] Notably, Defendants do not submit to this Court any print-out containing similar information regarding the grievances filed by Plaintiff during that period of time.

to exhaust this separate claim.  See Wright v. State Corr. Inst. at Greene, No. 06-865, 2009 WL 2581665, at *6 (W.D.Pa. Aug. 20, 2009) (McVerry, J.) (recognizing that retaliation is a distinct claim that must be explicitly grieved).  Thus, Defendants are entitled to summary judgment on this claim.

Plaintiff responds to Defendants' exhaustion arguments with three arguments of his own. First, he asserts that, because the same officials who reviewed, and ultimately denied, grievance 229125 would review his subsequent grievances, the administrative grievance process was "ineffectual[.]"  (Doc. 28) at 30.  This argument is directly contrary to established law.  Ahmed, supra, 297 F.3d at 206.

Second, with respect to the denial of meals that conformed to his religious beliefs by Defendants Maceyko and Lily, Plaintiff argues that he did begin the grievance process by filing grievance number 297181, but never received any sort of disposition.  (Doc. 28) at 13.  In support of this, Plaintiff submits a copy of grievance 297181, (Doc. 28-10), as well as a letter confirming its receipt by members of the DOC, (Doc. 28-11).  Defendants have not responded to this argument.

Section 1997e clearly requires prisoner plaintiffs to exhaust available administrative remedies prior to filing suit based on violations of federal law.  However, it is well established that a grievance procedure, even if it exists on paper, is not "available" under the meaning of section 1997e(a) if prison officials somehow prevent a prisoner from utilizing it.  Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003).  Failure by prison officials to respond to written requests can qualify as the sort of "prevention" that renders an existing administrative grievance policy unavailable.  Hill v. Scism, No. 3:CV-11-0080, 2011 WL 705354, at *1 n.1 (M.D.Pa. Feb 18, 2011) (citing Miller v. Norriz, 247 F.3d 736, 740 (8th Cir. 2001)).  Given Plaintiff's assertion

and the evidence in the record, it appears that, at the very least, a factual question exists as to what extent administrative remedies were available to Plaintiff with respect to this claim. Consequently, Defendants' exhaustion argument with respect to grievance 297181 is unpersuasive.[5]

Finally, Plaintiff asserts that, in response to Defendant Maceyko's confiscation of his crown, he filed grievance number 3910415. (Doc. 28) at 14. Plaintiff argues that, had he waited to exhaust this grievance fully, some of the claims on which he bases this suit would have run afoul of the statute of limitations.[6] Id. He avers to having filed an appeal to the superintendent of his facility on August 6, 2010, and, as of August 25, 2010, he was awaiting a response. Id.

As stated above, section 1997e requires the exhaustion of all administrative remedies prior to filing suit. Booth, 206 F.3d at 300. Attempts at exhaustion that take place after suit has been filed are ineffective to satisfy the requirements of section 1997e(a). See Woodford, 548 U.S. at 93. As such, even taking Plaintiff's assertion at face value, this Court must dismiss all claims arising from the confiscation of his crown without prejudice to Plaintiff filing a new cause of action after he has properly exhausted his administrative remedies.

---

[5] To the extent that Plaintiff makes assertions against Defendant Maceyko for allegedly interfering with his attempt to grieve his religious meal issue by informing him that his grievance would not "go far," his allegations are insufficient to state a claim on which relief can be granted. Prisoners do not have a constitutional right to prison grievance procedures. See, e.g., Heleva v. Kramer, 214 F.App'x 244, 247 (3d Cir. 2007) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)). Accordingly, Plaintiff's claim that Defendant Maceyko interfered with the filing of his administrative grievance will be dismissed because, in and of itself, it is not cognizable under section 1983. As leave to amend would be futile, dismissal is with prejudice.

[6] Plaintiff does not address the fact that he could have filed two separate causes of action.

**5. Free Exercise Claims**

Defendants argue that Plaintiff has failed to state a claim of a deprivation of his rights under the Free Exercise Clause of the First Amendment.

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, Cantwell v. Connecticut, 310 U.S. 296, 303 (1940), provides, *inter alia*, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. "Convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," Bell v. Wolfish, 441 U.S. 520, 545 (1979), including the protections of the First Amendment and its directive that no law shall prohibit the free exercise of religion. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "[A]ll prisoners must be afforded reasonable opportunities to 'exercise the religious freedom guaranteed by the First and Fourteenth Amendments.'" Small v. Lehman, 98 F.3d 762, 765 (3d Cir. 1996) (*overruled in part on other grounds*, City of Boerne v. Flores, 521 U.S. 507 (1997)) (quoting Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972)).

"The mere assertion of a religious belief does not automatically trigger First Amendment protections, however. To the contrary, only those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." DeHart v. Horn, 227 F.3d 47, 51 (3d Cir. 2000); see also Sutton v. Rasheed, 323 F.3d 236, 250-51 (3d Cir. 2003).

Once a sincerely held religious belief has been demonstrated, an inmate may show that a prison regulation or practice violates the right to free exercise of religion by showing that it does not pass the "reasonableness test" set forth in Turner v. Safley, 482 U.S. 78, 89 (1987), and O'Lone, 482 U.S.at 349. This test examines the following four factors: (1) whether the regulation or practice in question furthers a legitimate governmental interest unrelated to the

suppression of expression; (2) whether there are alternative means of exercising First

Amendment rights that remain open to prison inmates; (3) whether the right can be exercised

only at the cost of less liberty and safety for guards and other prisoners; and (4) whether an

alternative exists which would fully accommodate the prisoners' rights at *de minimis* cost to

valid penological interests. Thornburgh v. Abbott, 490 U.S. 401, 415-18; Turner, 482 U.S. at 89-

91. These standards indicate that "when a prison regulation or practice encroaches upon

prisoners' rights to free exercise of their religion, the regulation is valid if it is reasonably related

to a legitimate penological interest." Ramzidden v. Monmouth County Sherriff Dept., No. 09-

4829, 2010 WL 1752540, at *11 (D.N.J. Apr. 30, 2010). However, prison administrators need

not choose the least restrictive means possible in trying to further penological interests,

Thornburgh, 490 U.S. at 411, and it is the burden of the plaintiff to disprove the validity of a

prison regulation or practice. Williams v. Morton, 343 F.3d 212, 217 (2003) (citing Overton v.

Bazzetta, 539 U.S. 126 (2003)).

In the case at bar, it is not necessary to engage in an analysis of Plaintiff's claims under

Turner. This is because Plaintiff does not allege that the DOC regulations or practices with

respect to inmate grooming interfered with the practice of his religion, nor does he assert that he

was actually forced to cut his hair by Defendant Tedrow. Plaintiff does not indicate how he was

impeded in the practice of his religion by Defendant Tedrow's order on May 11, 2008, or his

subsequent follow-up on May 18, 2008. Plaintiff also fails to make any assertion of the same

with respect to his subsequent misconduct hearing – at which it is uncontested that Plaintiff was

not disciplined, nor was he forced to cut his dreadlocks.[7]

---

[7] This reasoning also provides an alternate means of dismissing Plaintiff's claims against
Defendant Watkins with respect to Plaintiff's hair exemption.

Even if Defendant Tedrow's orders to Plaintiff to cut his hair could be construed as a threat to interfere with Plaintiff's practice of his religion, Plaintiff still has failed to state a claim.[8] It is well established that mere threats, without something more, are not enough to create liability under section 1983. See Burkholder v. Newton, 116 F.App'x 358, 360 (3d Cir. 2004) (citing cases). Indeed, even threats of physical violence are insufficient to do so.[9] See Malsh v. Austin, 901 F.Supp. 757, 763 (S.D.N.Y. 1995). In light of this, it is clear that Defendant Tedrow's two orders to Plaintiff to cut his hair, and the filing of a misconduct – the sole issue of which was whether Plaintiff actually enjoyed a hair exemption – without some underlying constitutional deprivation, are insufficient to create a cause of action under the Civil Rights Act of 1871. See Parratt, 451 U.S. at 535. As it is apparent that leave to amend would be futile, these claims will be dismissed with prejudice.

In his response to Defendants' motion, Plaintiff appears to base his claims against Defendant Tedrow, at least in part, on the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), 42 U.S.C. § 2000cc *et seq*. (Doc. 28) at 16. RLUIPA provides in part: "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability," unless that burden "is in furtherance of a compelling governmental interest" and is accomplished by the "least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); see also Cutter v. Wilkinson,

---

[8] The evidence on the record and, indeed, Plaintiff's factual allegations themselves, do not support even this interpretation of Defendant Tedrow's actions. Plaintiff indicates that Defendant Tedrow's orders, and subsequent filing of misconduct charges, were based on his belief that Plaintiff was not in possession of a valid hair exemption. See, e.g., (Doc 1-3) at 2,4,6. The record contains no indication of any animus on the part of Defendant Tedrow, nor does it indicate that his orders were an attempt to interfere with the practice of Plaintiff's religion.

[9] Plaintiff's claims against Defendants Lily and Maceyko for allegedly telling him to "eat what he was given" also fail under this analysis.

544 U.S. 709, 712 (2005). In order to prevail under RLUIPA, a plaintiff must show that his

religious exercise has been substantially burdened by the challenged conduct. Washington v.

Klem, 497 F.3d 272, 277-78 (3d Cir. 2007). The Court of Appeals for the Third Circuit has

defined a "substantial burden" in the context of RLUIPA to mean

> 1) a follower is forced to choose between following the precepts of
> his religion and forfeiting the benefits otherwise generally
> available to other inmates versus abandoning one of the precepts of
> his religion in order to receive a benefit; OR 2) the government
> puts substantial pressure on an adherent to substantially modify his
> behavior and to violate his beliefs.

Washington, 497 F.3d at 280 (emphasis in original). Under this test, and for the reasons stated

above, Plaintiff's factual allegations clearly indicate that he was never subjected to any sort of

"substantial burden" under the meaning of this statute. Plaintiff was never disciplined for not

cutting his hair, and there is no indication in the complaint, or anywhere else in the record, that

would raise even an inference that Plaintiff suffered any restrictions or administrative

confinement while his misconduct charges were pending. To the extent that he bases them on

RLUIPA, Plaintiff's claims against Defendant Tedrow fail. Additionally, as it is clear that leave

to amend would be futile, dismissal is with prejudice.


   **6.** **Equal Protection Claims**

   The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly

situated individuals from disparate treatment under the law or by some other state action.

Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection

Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons

similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living

Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corrs., 31 F.3d 727, 731 (8th Cir.1994).

In order to state a claim under the Equal Protection Clause, a plaintiff must, as a threshold matter, allege facts supporting the conclusion that:

> (1) the complaining person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *2 (E.D.Pa. Aug. 20, 1999) (internal quotations omitted); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). It is incumbent on one asserting a Fourteenth Amendment equal protection claim to show the existence of some purposeful discrimination. McClesky v. Kemp, 481 U.S. 279, 292 (1987).

Beyond making bare, conclusory assertions, Plaintiff has provided no factual allegations that would support the conclusion that Defendant Tedrow discriminated against him based on his religion, or that Defendant Tedrow's acts were in any way malicious or in bad faith, or intended to punish Plaintiff for exercising a constitutional right. Indeed, beyond Plaintiff's conclusory assertions of malice and bias, the allegations in the complaint do not indicate that Defendant Tedrow's actions were the result of any sort of animus – class-based or otherwise.[10] Plaintiff's

---

[10] Plaintiff's own statements made in his administrative grievance of this issue – which he submits as exhibits to his complaint – indicate instead that Plaintiff's name did not appear on a list of inmates with approved hair exemptions, and that Defendant Tedrow's orders to Plaintiff to cut his hair were based on that Defendant's belief that Plaintiff did not enjoy a hair exemption. See Ex. A to Compl. (Doc. 1-3) at 2 ("Then [Defendant Tedrow] asked about my hair exemption (continued. . .)

factual allegations with respect to this isolated incident fail to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," and thus this claim warrants dismissal. See Twombly, 550 U.S. at 570. However, as it is not absolutely certain that the grant of leave to amend would be futile, and out of an abundance of caution, dismissal will be without prejudice.

With respect to his brief denial of religiously acceptable food involving Defendants Maceyko and Lily, Plaintiff has failed to allege facts that would support the plausible conclusion that he was treated differently from similarly situated individuals. Plaintiff's example that another prisoner was provided with medically required meals is insufficient to meet this requirement, because the two inmates are not similarly situated. Furthermore, Plaintiff includes no allegations that other inmates were provided with religious foods during this brief lockdown. Accordingly, Plaintiff's equal protection claims against Defendants Maceyko and Lily will be dismissed. Again, however, as it is unclear that leave to amend would necessarily be futile, dismissal will be without prejudice.

### 7. **Due Process Claims**

Defendants interpret Plaintiff's allegations as an attempt to raise a claim under the Due Process Clause of the Fourteenth Amendment. "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the procedures used to implement them.'" Zinermon v. Burch, 494 U.S. 113, 125 (1990) (quoting Daniels, 474 U.S. at 331). Official conduct violates substantive due process if it "shocks the

---

and said I'm not on the list. I told him it was an error that took place before."); see also Ex. C to Compl. (Doc. 1-3) at 4 ("I told [Defendant Tedrow] it's my religion and I have an exeption [*sic*], he contended I do'nt [*sic*] . . . . The only issue addressed at the misconduct hearing [initiated by Defendant Tedrow] was whether I lied about having a hair exexption [*sic*] and I did so it was dismissed."

conscience . . . ." Newman v. Beard, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations and quotes omitted). This standard "encompasses only the most egregious official conduct." Id. (internal citations and quotes omitted).

Prior to engaging in a substantive due process analysis of Plaintiff's claims, it is first necessary to determine whether Plaintiff's claims actually require a substantive due process analysis. The Supreme Court has noted that it has "'always been reluctant to expand the concept of substantive due process[.]'" Cnty. of Sacramento v. Lewis, 523 U.S. 833, 842 (1998) (quoting Collins v. City of Harker Heights, 503 U.S. 115, 125 (1992)). Consequently, it has established the "more-specific provision rule." Lewis, 523 U.S. at 843-44. Under this rule "'if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'" Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 259-60 (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).

Here it is clear that the acts of which Plaintiff complains arise under the First Amendment, the Eighth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. Consequently, Plaintiff's claims of violations of substantive due process, to the extent that he makes them, must be dismissed. As it would be futile as a matter of law to grant leave to amend, dismissal of this claim is with prejudice.

### 9. Eighth Amendment

The Eight Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quote omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone insufficient to raise a constitutional claim – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Id. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

As noted above, with respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 834-35; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The deliberate

indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments."

Id. at 838.

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir.1 998) (quoting Wilson, which quoted Rhodes). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." Id.

Before this Court are Plaintiff's allegations that he was denied religiously-acceptable meals during a two-day lockdown. Plaintiff's grievances indicate that he was able to eat breakfast on the two days in question, but that lunch a dinner contained foods that were forbidden by his religion. Additionally, Plaintiff has not alleged, and the record does not otherwise indicate, that he suffered from any weight loss, or health problems as a result of this two-day deprivation.[11] See King v. Beard, No. 09-175, 2010 WL 3338833, at *6 (W.D.Pa. July

---

[11] Plaintiff indicates that he suffered only "a severe amount of emotional distress" as a result of this. (Doc. 3) ¶ 56. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(e), "predicates a prisoner's claim for mental or emotional injury suffered while in custody on a (continued. . .)

26, 2010) (Baxter, Mag.J.).  Given the short duration of Plaintiff's deprivation, along with the fact that he was able to eat at least one meal a day during the two days in question, Plaintiff's Eighth Amendment claim fails as a matter of law.  See Turner v. Dretke, 326 F.App'x 751, 753 (5th Cir. 2009) (finding that the denial of food comporting with religious dietary requirements during a lockdown – at least for brief periods – does not deny "life's basic necessities," and is therefore not a violation of the Eighth Amendment).  See also Terry v. Anderson, No. 5:06–cv–00049, 2009 WL 305163, at *9 (S.D.W.Va. Feb. 6, 2009) (finding no denial of "minimal civilized measure of life's necessities" when prisoner is deprived of "eatable food" during a 72-hour lockdown); see also Gawloski v. Dallman, 803 F.Supp. 103, 111-12 (S.D.Ohio 1992) (Plaintiff's allegations that he received no hot meals did not constitute cruel and unusual punishment absent some indication that plaintiff received less than one meal a day or that the meals lacked nutritional value or were in some way harmful to Plaintiff's health).  Thus, Plaintiff's Eighth Amendment claims will be dismissed.  However, as it is not clear that it necessarily would be futile to grant leave to amend, dismissal will be without prejudice.

### 10.   Plaintiff's Motion for Judgment on the Pleadings

On January 31, 2011, Plaintiff filed a motion captioned "Motion for Judgment on Pleadings."  (Doc. 38).  After reading this motion, it appears that this is properly construed as a motion for this Court to enter an order on Defendants' then-pending motion to dismiss.  In light of the current memorandum opinion and order, this motion will be denied as moot.

---

showing of accompanying physical injury."  Mitchell v. Horn, 318 F.3d 523, 533 (3d Cir. 2003). Mere allegations of emotion distress are not enough to satisfy the PLRA's requirement of physical injury.

AND NOW, this 31st day of March, 2011,

IT IS HEREBY ORDERED that the motion to dismiss filed by Defendants (Doc. 20) will be GRANTED WITH PREJUDICE in part and GRANTED WITHOUT PREJUDICE in part.

IT IS FURTHER ORDERED that the following claims are DISMISSED WITH PREJUDICE:

1. Plaintiff's claims for damages against Defendants in their official capacities;

2. Plaintiff's state law claims against Defendants;

3. Plaintiff's claims against Defendants Beard, Watson, Mazurkiewicz, and Lockett;

4. All claims premised on the improper handling of administrative grievances;

5. Plaintiff's Free Exercise claims against Defendant Tedrow;

6. Plaintiff's harassment claims; and

7. Plaintiff's Fourteenth Amendment Due Process claims.

IT IS FURTHER ORDERED that Plaintiff's Equal Protection claims against Defendants Maceyko, Lily, and Tedrow, as well as his claims arising under the Eighth Amendment, are DISMISSED WITHOUT PREJUDICE. Plaintiff shall, if appropriate, file an amended complaint with respect to these claims by April 21, 2011. Failure to do so will result in these claims being dismissed with prejudice.

IT IS FURTHER ORDERED that summary judgment is GRANTED to Defendants on Plaintiff's claims involving Defendant Watkins's alleged mishandling of Plaintiff's applications for hair exemptions, and Plaintiff's retaliation claims against Defendant Tedrow.

IT IS FURTHER ORDERED that Plaintiff's claims involving the confiscation of his religious headgear are DISMISSED WITHOUT PREJUDICE to Plaintiff refiling after properly exhausting his administrative remedies.

IT IS FURTHER ORDERED that Plaintiff's Motion for Judgment on the Pleadings (Doc. 38), which is properly construed as a motion for this court to rule on Defendants' motion to dismiss, is DENIED as MOOT.

Plaintiff is reminded that, to the extent that this Memorandum Order permits the filing of an amended complaint, Plaintiff's complaint must comport with the mandates of Federal Rule of Civil Procedure 11(a) and (b).

s/Cathy Bissoon
CATHY BISSOON
UNITED STATES MAGISTRATE JUDGE

cc:
**ANTONIO HENNIS**
HY-4980
S.C.I. Greensburg
165 S.C.I. Lane
Greensburg, PA 15601