# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTONIO HENNIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 10-445 |
| | ) | |
| v. | ) | |
| | ) | Judge Cathy Bissoon |
| OFFICER TEDROW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons that follow, Defendants' motion to dismiss (Doc. 52) will be granted with prejudice. Additionally, Plaintiff's motions to file supplemental pleadings (Docs. 57 and 61) will be denied as futile.

Antonio Hennis ("Plaintiff") is a state prisoner currently incarcerated in the State Correctional Institution at Greensburg, Pennsylvania ("SCI-Greensburg"). Plaintiff brings this suit pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. His initial complaint alleged deprivations of his rights under the First, Eighth, and Fourteenth Amendments to the United States Constitution by eight Defendants, all of whom were employed by the Pennsylvania Department of Corrections ("DOC") at all times relevant to the complaint. Compl. (Doc. 3) ¶ 51. This suit commenced with this Court's receipt of Plaintiff's motion to proceed *in forma pauperis* ("IFP") on April 5, 2010. (Doc. 1). Leave to proceed IFP was granted on April 7, 2010. (Doc. 2).

On March 31, 2011, this Court granted Defendants' motion to dismiss, or in the alternative, motion for summary judgment. See (Docs. 24 and 41). Plaintiff was granted leave to amend his Equal Protection claims against Defendants Maceyko, Lily, and Tedrow, as well as

1

his claims arising under the Eighth Amendment. (Doc. 41 at 28). Plaintiff filed his amended complaint on May 12, 2011. (Doc. 50). Defendants filed the instant motion to dismiss on May 25, 2011. (Doc. 52). Plaintiff responded to Defendants' motion on July 18, 2011. (Doc. 61). This issue is ripe for disposition

### A. Plaintiff's Factual Allegations and Legal Claims

Plaintiff's relevant factual allegations are as follows.

In his amended complaint, Plaintiff alleges that he was approached by Defendant Tedrow and ordered to cut off his dread locks. Am. Compl. (Doc. 50 ¶ 10). Plaintiff responded that he had a valid religious hair-length exemption, and that removing his dreadlocks would violate his religious beliefs. Id.; see also id. ¶¶ 15-16 (alleging the connection of dreadlocks to Plaintiff's religious beliefs, and indicating past existence of a religious exemption for Plaintiff's hair). Defendant Tedrow allegedly responded that Plaintiff was not on the list for such an exemption, and ordered Plaintiff to have his hair cut within seven days. Id. ¶ 10.

Seven days later, Defendant Tedrow allegedly "left his post" to follow up with Plaintiff regarding his earlier order. Id. ¶ 11. Plaintiff asserted that there was a mistake, and that he was attempting to clear up the issue. Defendant Tedrow was unswayed by this argument, and issued Plaintiff a prison misconduct report for not complying with his earlier order. Id. Plaintiff filed grievance number 229125, naming Defendant Tedrow, that same day. Id. ¶ 20.

Defendant Tedrow initiated misconduct proceedings against Plaintiff on or about May 18, 2010 – apparently sometime after Plaintiff initiated his grievance. See (Doc. 3 ¶ 20); see also (Doc. 21-1 at 7); see also Def.s' Ex. C to Br. in Supp. of Mot. to Dismiss (Doc. 21-1 at 17). This misconduct was dismissed. (Doc. 1-3 at 4). Plaintiff eventually was granted a

2

hair-length exemption on July 28, 2008. See Def.s' Ex. D to Br. in Supp. of Mot. to Dismiss (Doc. 21-1 at 19). There is no indication in the initial complaint, the amended complaint, or anywhere else on the record that Plaintiff ever was forced to cut his hair as a result of this encounter with Defendant Tedrow.

Plaintiff alleges that no other Rastafarian at SCI-Greensburg has been ordered to cut their dreadlocks, nor have they been issued a misconduct report for failing to do so. (Doc. 50 ¶ 22). He alleges that the same is true for practitioners of Native American religions. Id. Plaintiff claims that Defendant Tedrow's alleged acts or omissions violated his rights under the Eighth Amendment, as well as the Equal Protection Clause of the Fourteenth Amendment. Id. ¶¶ 37-38, 45-46.

Next, Plaintiff alleges that on November 17-18, 2009, during a prison lockdown, he was denied vegetarian meals, which are required by his religious beliefs. Id. ¶¶ 23-24. Plaintiff brought this to the attention of Defendants Maceyko and Lily – both of whom were, at the time of the alleged incident, corrections sergeants. Id. ¶¶ 27-30. Plaintiff also told Defendant Lily that he had been complaining of this alleged denial of vegetarian meals to his subordinates, and that nothing had been done. Id. ¶ 27. Defendants Maceyko and Lily allegedly "mocked" Plaintiff, and ordered him to eat what he was given. Id. ¶¶ 28-30. Plaintiff asserts that he also observed Defendant Maceyko providing another inmate with a medically required meal. Ex. K to Compl. (Doc. 1-3 at 12); (Doc. 50 ¶ 30). Plaintiff threatened to file a grievance, and Defendant Maceyko responded "go ahead it [will not] go far." (Doc. 50 ¶ 30). The exhibits submitted in support of Plaintiff's initial complaint demonstrate that Plaintiff filed grievance 297181 on November 20, 2009 – after the lockdown was over – and indicated that he had been unable to eat anything other than breakfast for a two-day period because the meals that he was

3

served contained meat. Id. ¶ 34; (Doc. 1-3 at 12) ("[f]or two days the only meal that I was able to eat was breakfast"). Plaintiff named both Defendants Maceyko and Lily in this document. Plaintiff alleges in the amended complaint, for the first time, that "due to Plaintiff's lack of nutritional meals during the winter months the Plaintiff had trouble staying warm, suffered from stomach pain and cramps, fatigue and dizziness for the two days on lockdown." (Doc. 50 ¶ 33).

Plaintiff alleges that the acts of Defendants Maceyko and Lily violated his rights under the Equal Protection Clause of the Fourteenth Amendment, and the Cruel and Unusual Punishment Clause of the Eighth Amendment. Id. ¶¶ 34, 40, 42.

B. **Analysis**

In order for a claim to be cognizable under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements. First, the alleged misconduct giving rise to the cause of action must have been committed by a person acting under color of state law; and second, the defendants' conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), (overruled in part on other grounds, Daniels v. Williams, 474 U.S. 327, 330-331 (1986)). Defendants make several arguments supporting the grant of summary judgment or dismissal in their favor. These will be addressed *seriatim*.

1. **Free Exercise Claims**

Defendants interpret Plaintiff's allegations as an attempt to restate his prior Free Exercise claim against Defendant Tedrow, which had been dismissed with prejudice by this Court's prior order. (Doc. 53 at 5); (Doc. 41 at 21). Plaintiff responds that, in his amended complaint, he

4

attempts to raise claims only under the Eighth and Fourteenth Amendments. (Doc. 60 at 8). The undersigned will take Plaintiff at his word.

### 2. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment exists to protect similarly situated individuals from disparate treatment under the law or by some other state action. Artway v. Att'y Gen. of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996). The Equal Protection Clause "is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" Id. (quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). "Treatment of dissimilarly situated persons in a dissimilar manner by the government does not violate the Equal Protection Clause." Klinger v. Dep't of Corr., 31 F.3d 727, 731 (8th Cir.1994).

In order to state a claim under the Equal Protection Clause, a plaintiff must, as a threshold matter, allege facts supporting the conclusion that:

> (1) the complaining person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person.

Sabatini v. Reinstein, No. 99-2393, 1999 WL 636667, at *2 (E.D. Pa. Aug. 20, 1999) (internal quotations omitted); see also Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995). It is incumbent on one asserting a Fourteenth Amendment equal protection claim to show the existence of some purposeful discrimination. McClesky v. Kemp, 481 U.S. 279, 292 (1987).

To the extent that Plaintiff asserts his claims under a "class-of-one" theory, he can state a claim for the violation of the Equal Protection Clause only if he alleges facts showing "'that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006) (quoting Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (per curium)). Specifically, Plaintiff must allege facts that support the conclusion that "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill, 455 F.3d at 239.

As was the case with his initial complaint, Plaintiff has provided no factual allegations that would support the conclusion that Defendant Tedrow discriminated against him based on his religion, or that Defendant Tedrow's acts were in any way malicious, in bad faith, or intended to punish Plaintiff for exercising a constitutional right. Indeed, the allegations in the amended complaint do not indicate that Defendant Tedrow's actions were the result of any sort of animus – class-based or otherwise.[1] Moreover, Plaintiff conceded that no other Rastafarian has been ordered to cut their dreadlocks, or been issued a misconduct report for failing to do so, undermining any theory of religious discrimination.

---

[1] Plaintiff's own statements made in his administrative grievance on this issue – which he submits as exhibits to his initial complaint – indicate instead that Plaintiff's name did not appear on a list of inmates with approved hair exemptions, and that Defendant Tedrow's orders to Plaintiff to cut his hair were based on that Defendant's belief that Plaintiff did not enjoy a hair exemption. See Ex. A to Compl. (Doc. 1-3 at 2) ("Then [Defendant Tedrow] asked about my hair exemption and said I'm not on the list. I told him it was an error that took place before."); see also Ex. C to Compl. (Doc. 1-3 at 4) ("I told [Defendant Tedrow] it's my religion and I have an exeption [sic], he contended I do'nt [sic] . . . . The only issue addressed at the misconduct hearing [initiated by Defendant Tedrow] was whether I lied about having a hair exexption [sic] and I did so it was dismissed.").

Additionally, Plaintiff's factual allegations, and statements in exhibits to his initial complaint, demonstrate that Defendant Tedrow had a rational basis for ordering Plaintiff to cut his hair – his belief that Plaintiff did not possess a valid religious exemption for his dreadlocks. (Doc. 1-3 at 2, 4, 6); (Doc. 50 ¶ 10). Plaintiff's factual allegations with respect to the incident with Defendant Tedrow fail to "nudge[] [Plaintiff's] claims across the line from conceivable to plausible," and thus this claim warrants dismissal. See <u>Bell Atlantic Corp v. Twombly</u>, 550 U.S. 544, 570 (2007). As it now is clear that leave to amend would be futile, dismissal will be with prejudice. See <u>Alston v. Parker</u>, 363 F.3d 229, 235 (3d Cir. 2004).

With respect to his brief denial of religiously acceptable food involving Defendants Maceyko and Lily, Plaintiff once again has failed to allege facts that would support the plausible conclusion that he was treated differently from similarly situated individuals. Plaintiff's example that another prisoner was provided with medically required meals is insufficient to meet this requirement, because the two inmates are not similarly situated. Furthermore, Plaintiff includes no allegations that other inmates were provided with religious foods during this brief lockdown. Accordingly, Plaintiff's equal protection claims against Defendants Maceyko and Lily will be dismissed. As it now is clear that leave to amend would necessarily be futile, dismissal will be prejudice.

### 3. <u>Eighth Amendment</u>

The Eight Amendment's prohibition of cruel and unusual punishment forbids prison officials from subjecting prisoners to inhumane conditions of confinement. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). "[P]rison officials must ensure that inmates receive adequate food,

clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates[.]'" Id. (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

In order to state an Eighth Amendment conditions of confinement claim, Plaintiff must allege both that he has been denied "the minimal civilized measure of life's necessities" and that this was done while the Defendants had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. With respect to the first requirement, conditions cited by an inmate must be "objectively, sufficiently serious [and] must result in the denial of the minimal civilized measure of life's necessities." Id, at 834 (internal citation and quote omitted). Only "extreme deprivations" are sufficient to make out a conditions of confinement claim. Hudson v. McMillen, 503 U.S. 1, 8-9 (1992). A plaintiff must prove that the deprivation is sufficiently serious when viewed within the context of "contemporary standards of decency." Helling v. McKinney, 509 U.S. 25, 36 (1993). Although a combination of confinement conditions – considered alone insufficient to raise a constitutional claim – may present an Eighth Amendment violation, they nevertheless must cumulatively produce "the deprivation of a single, identifiable human need such as food, warmth, or exercise . . . ." See Wilson v. Seiter, 501 U.S. 294, 304 (1991). In applying this test, the Court acknowledges that "[t]he Constitution . . . does not mandate comfortable prisons." Id. at 298. "In considering whether a prisoner has been deprived of his rights, courts may consider the length of time that the prisoner must go without those benefits." Hoptowit v. Ray, 682 F.2d 1237, 1258 (9th Cir. 1982) (citing Hutto v. Finney, 437 U.S. 678, 685 (1978)).

As noted above, with respect to the second element, an inmate must demonstrate deliberate indifference to prison conditions on the part of prison officials. Farmer, 511 U.S. at 834-35; Wilson, 501 U.S. at 297; Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The deliberate

8

indifference standard has been defined as requiring that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. The Supreme Court has recognized that "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" Id. at 838.

"The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" Talib v. Gilley, 138 F.3d 211, 214 n.3 (5th Cir. 1998) (quoting Wilson, which quoted Rhodes). "Whether the deprivation of food falls below this threshold depends on the amount and duration of the deprivation." Id.

Before this Court are Plaintiff's allegations that he was denied religiously-acceptable meals during a two-day lockdown. Plaintiff's grievances indicate that he was able to eat breakfast on the two days in question, but that lunch and dinner contained foods that were forbidden by his religion. Given the short duration of Plaintiff's deprivation, along with the fact that he was able to eat at least one meal a day during the two days in question, Plaintiff's Eighth Amendment claim fails because he cannot meet the objective prong of the Eight Amendment test. See Turner v. Dretke, 326 F. App'x 751, 753 (5th Cir. 2009) (finding that the denial of food comporting with religious dietary requirements during a lockdown – at least for brief periods – does not deny "life's basic necessities," and is therefore not a violation of the Eighth Amendment). See also Terry v. Anderson, No. 5:06–cv–00049, 2009 WL 305163, at *9 (S.D.W. Va. Feb. 6, 2009) (finding no denial of "minimal civilized measure of life's necessities" when prisoner is deprived of "eatable food" during a 72-hour lockdown); see also Gawloski v. Dallman, 803 F. Supp. 103, 111-12 (S.D. Ohio 1992) (Plaintiff's allegations that he received no

9

hot meals did not constitute cruel and unusual punishment absent some indication that plaintiff received less than one meal a day or that the meals lacked nutritional value or were in some way harmful to Plaintiff's health). Additionally, while Plaintiff's amended complaint contains newly-minted allegations that he "had trouble staying warm, suffered from stomach pain and cramps, fatigue and dizziness for the two days on lockdown[,]" (Doc. 50 ¶ 33), Plaintiff never alleges that he told anyone of these alleged conditions during the lockdown. Furthermore, Plaintiff's allegations clearly show that Defendants Lily and Maceyko learned of Plaintiff's alleged deprivation of vegetarian meals only in connection with the final non-vegetarian meal that was served on the second day of the lockdown, and that Plaintiff's normal meals resumed at the very next meal-time. Id. ¶¶ 27-30. While their alleged refusal to contact the kitchen, if true, certainly is not laudable, it is a far cry from the culpable state of mind required to state a claim for a violation of the Cruel and Unusual Punishments Clause. Accordingly, Plaintiff's Eighth Amendment Claims against Defendants Maceyko and Lily will be dismissed. As it is clear that the grant of further leave to amend would be futile, dismissal will be with prejudice.

Next, it appears that Plaintiff is attempting to raise an Eighth Amendment claim against Defendant Tedrow for the above incident involving his hair-length exemption. A review of the record indicates that Plaintiff did not make such a claim in his initial complaint, see generally (Doc. 3), and, while he was allowed by this Court in the order of March 31, 2011, to amend his complaint with respect to his prior Eighth Amendment claims, Plaintiff was not given leave to raise new legal claims. See (Doc. 41 at 28). These are grounds enough for dismissal. Additionally, to the extent that Plaintiff's new Eighth Amendment claim against Defendant Tedrow could be construed as properly-raised, it is noted that Plaintiff was never forced to cut his hair, and that the filing of a misconduct charge – even one that is false – cannot, as a matter

of law, rise to the level of an Eighth Amendment violation. See, e.g., Booth v. Pence, 354 F. Supp. 2d 553, 559 (E.D. Pa. 2005) aff'd 141 F. App'x 66 (3d Cir. 2005). For these reasons, Plaintiff's Eighth Amendment claim against Defendant Tedrow is meritless, and will be dismissed with prejudice.[2]

### 4. **Plaintiff's Motions to File Supplemental Pleadings**

Plaintiff has filed two motions to file supplemental pleadings since he submitted his amended complaint. In the first, Plaintiff wishes to add an individual named Officer Buck as a Defendant to this case. Plaintiff alleges that Buck was involved with denying him a single vegetarian lunch on November 20, 2009, during the same lockdown, from which arose his claims against Defendants Lily and Maceyko. (Doc. 57-1 at 1). Plaintiff alleges that he had grieved this incident in grievance 297181 – the same grievance that he filed against Defendants Maceyko and Lily – but does not explain why he chose not to name Buck in the initial or amended complaints. In his proposed supplemental complaint, Plaintiff alleges that he told Buck that he had been denied two vegetarian meals on November 19, 2009, but he does not allege that Buck had anything to do with those alleged denials of vegetarian meals, nor with the subsequent denial of a vegetarian dinner later that day. Based on the analysis in Part B.3, supra, it is clear that Plaintiff

---

[2] Despite Defendants' failure to address this assertion, it is still appropriate for this Court to dismiss this claim *sua sponte*. 28 U.S.C.§ 1915 requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Thus, a court must dismiss, *sua sponte*, a complaint that lacks arguable merit in fact or law. Stackhouse v. Crocker, 266 F. App'x 189, 190 (3d Cir. 2008) (citing Neitzke v. Williams, 490 U.S. 319, 325 (1989)). The standard for reviewing a complaint under section 1915(e)(2)(B) is the same as that for determining a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999); see also Banks v. Mozingo, No. 08-004, 2009 WL 497572, at *6 (W.D. Pa. Feb. 26, 2009) (Cercone, J.).

cannot meet the objective prong of the Eighth Amendment test. Additionally, as Plaintiff ate a meal earlier in the day, does not indicate that he informed Buck of his alleged symptoms, and does not allege that Buck was involved in serving any other non-vegetarian meal, Plaintiff cannot meet the subjective prong either. Furthermore, to the extent that Plaintiff alleges that Buck's involvement in confiscating a vegetarian meal on May 26, 2011, constitutes a "continuing violation" that would make a supplemental pleading appropriate, these two, discrete, unrelated events are too temporally separated for such an argument to be at all persuasive. Plaintiff's motion is futile, and will be denied as such.

Next, Plaintiff seeks leave to file a supplemental pleading regarding claims that were dismissed earlier in this case as unexhausted. (Doc. 61 at 1). As was explained in the order of March 31, 2011 (Doc. 53 at 17), 28 U.S.C. § 1997e requires the exhaustion of all administrative remedies prior to filing suit. Booth v. Churner, 206 F.3d 289, 300 (3d Cir. 2000). Attempts at exhaustion that take place after suit has been filed are ineffective to satisfy the requirements of section 1997e(a). See Woodford v. Ngo, 548 U.S. 81, 93 (2006). If Plaintiff wishes to raise any such claim, he must file a new cause of action.

AND NOW, this 27th day of December, 2011,

IT IS HEREBY ORDERED that Defendants' motion to dismiss (Doc. 52) the amended complaint (Doc. 50) is GRANTED WITH PREJUDICE as to all of Plaintiff's remaining claims.

IT IS FURTHER ORDERED that Plaintiff's motions to file supplemental pleadings (Docs. 57 and 61) are DENIED as futile.

BY THE COURT:


<u>s/Cathy Bissoon</u>
CATHY BISSOON
UNITED STATES DISTRICT JUDGE



cc:
**ANTONIO HENNIS**
HY-4980
S.C.I. Greensburg
165 S.C.I. Lane
Greensburg, PA 15601

All counsel of record